U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2011 JUN -6  AM 11: 14

CLERK
BY   PM
         DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

KELLI L. CORBEIL,                         )
                                          )
         Plaintiff,                       )
                                          )
v.                                        )   Case No. 5:10-cv-56
                                          )
CLINTON H. BLOOD and                      )
PRUCO LIFE INSURANCE COMPANY              )
                                          )
         Defendants.                      )

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT PRUCO'S
MOTION TO DISMISS CROSS-CLAIMS**
(Doc. 109)

This matter came before the court on April 14, 2011 for oral argument on Defendant Pruco Life Insurance Company's ("Pruco") Fed. R. Civ. P. 12(b)(6) motion to dismiss Defendant Clinton Blood's cross-claims. Mr. Blood opposes the motion.

Plaintiff Kelli Corbeil initiated this fourteen count civil action against her insurance broker, Mr. Blood, and her insurer, Pruco, seeking insurance coverage, as well as compensatory and punitive damages, after Pruco denied coverage under a life insurance policy (the "Policy") issued to her late husband William Corbeil.

Mr. Blood is represented by Ryan B. Gardner, Esq. Pruco is represented by Kavi S. Shahi, Esq. Ms. Corbeil, who is represented by Thomas Costello, Esq. takes no position on the pending motion.

I.      **Factual and Procedural Background.**

In her Second Amended Complaint, Ms. Corbeil alleges that her husband, William Corbeil, a Vermont resident, sought to obtain life insurance with the intent to name her as the policy's beneficiary. The Corbeils asked Mr. Blood, an insurance broker, to obtain the policy on their behalf. Mr. Blood never advised the Corbeils that he was not

licensed or authorized to act as an insurance broker in the State of Vermont. To the contrary, Ms. Corbeil alleges that Mr. Blood represented to the Corbeils that he was a knowledgeable insurance expert with lawful authority to obtain insurance policies, including life insurance, in Vermont.

On May 18, 2007, Mr. Blood entered into an Insurance Broker Agreement (the "Agreement") with Pruco. *See* Doc. 115-1. That same month, he informed the Corbeils that Pruco had agreed to provide life insurance for William Corbeil. On May 23, 2007, Mr. Blood presented Mr. Corbeil with a Pruco form entitled "Application for Life Insurance or Policy Change (the "Application"). The Application's "Signature" section states as follows: "I certify, affirm and understand the following: . . . I will inform [Pruco] of any changes in my or any proposed insured's health, mental or physical; condition, or any changes to any answers on this application prior to or upon delivery of the policy" (the "Certification Clause" ). (Doc. 135 ¶ 27.)  Mr. Blood, who completed the application for Mr. Corbeil, allegedly did not read or explain the meaning of the Certification Clause to the Corbeils. Mr. Corbeil signed the Application and provided Mr. Blood with a check made out to Pruco for the premium on the Policy.

On or about July 2, 2007, Pruco offered Mr. Corbeil the Policy in the amount of one million dollars for which Plaintiff was the named beneficiary. Mr. Corbeil accepted the Policy on or about this same day. Shortly thereafter, Mr. Blood mailed additional Pruco documents to Mr. Corbeil. These documents included a second insurance application, the Policy, the "Policy at a Glance," and a Request for Electronic Funds Transfer. The "Policy at a Glance" contained a "Good Health" statement that required Mr. Corbeil to verify that "[t]o the best of [his] knowledge and belief, the health and the mental and physical condition of all persons proposed for coverage have not changed since the answers and statements were given in the application that is included in and made a part of this contract." *Id.* ¶ 41. Mr. Blood did not read or explain the Good Health statement to Mr. Corbeil, or inquire as to whether any of his answers on the Application had changed. Mr. Corbeil signed the Good Health statement at Mr. Blood's direction.

According to Mr. Blood, Pruco instructed Mr. Blood that the Policy could be delivered to Plaintiff and Mr. Corbeil via mail, but otherwise did not advise, train, or educate Mr. Blood as to its procedures and policies with respect to the completion of the Application and the delivery of the Policy.

Mr. Corbeil made or caused to be made premium payments for the Policy until his death on April 21, 2009. Plaintiff subsequently demanded payment of the proceeds under the Policy. On September 28, 2009, Pruco denied Plaintiff's request for the insurance benefits and rescinded the Policy. Pruco's stated basis for denying coverage was the result of a CT scan that was performed on Mr. Corbeil on June 19, 2007 which revealed a possible small tumor in Mr. Corbeil's chest which was not reported to Pruco before it issued the Policy. Pruco asserted that the Certification Clause required Mr. Corbeil to inform Pruco of this information and that, in the absence of disclosure, Mr. Corbeil's Good Health statement was untruthful.

Plaintiff seeks to recover the Policy proceeds from Pruco, as well as compensatory and punitive damages from both Pruco and Mr. Blood arising out of the denial of coverage. Counts one through six implicate only Mr. Blood, and counts eight through fourteen implicate only Pruco. Count seven asserts that Pruco is vicariously liable for the conduct of Mr. Blood. More specifically, Plaintiff alleges that Mr. Blood is liable because he (1) failed to ensure that the Corbeils understood the Application and Policy; (2) failed to explain the Certification Clause and Good Health statement; and (3) failed to accurately complete the Application and other documents that William Corbeil signed.

While Plaintiff's claims against Mr. Blood are focused on the insurance application process, her claims against Pruco are based on its ultimate decision to deny coverage and rescind the Policy. Specifically, Plaintiff alleges that Pruco is liable on the following grounds: (1) Mr. Corbeil's answer to the Good Health statement was not a material misrepresentation; (2) Mr. Corbeil's failure to disclose the results of his CT scan under the Certification Clause was not a sufficient basis to rescind the Policy; (3) Pruco is estopped from relying on any documents subsequent to the Application as a basis to deny

coverage; (3) Mr. Corbeil justifiably relied to his detriment on Pruco's promise to provide coverage; and (4) Pruco's denial of coverage constitutes a breach of contract.

Mr. Blood has filed cross-claims for implied and contractual indemnification against Pruco, and Pruco seeks dismissal of those claims.[1]

## II. Conclusions of Law and Analysis.

Mr. Blood seeks indemnification in the event that Plaintiff secures a damages award against him. Count one alleges entitlement to "implied indemnification" based upon Mr. Blood's and Pruco's relative fault in harming Plaintiff. Count two seeks contractual indemnification based upon the Agreement between Mr. Blood and Pruco. Pruco moves to dismiss both counts pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Mr. Blood has failed to state a claim entitling him to relief under either theory of indemnification.

### A. Standard of Review.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2). In *Iqbal*, the Supreme Court set forth a "two-pronged" approach for analyzing a motion to dismiss. 129 S. Ct. at 1950. First, a court must accept a plaintiff's factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor. *Id.* at 1949-50. However, this assumption of truth does not apply to legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Second, a court must determine whether the complaint's "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." *Id.* at 1950. "A claim has facial plausibility when the plaintiff pleads factual

---

[1] In light of Plaintiff's Second Amended Complaint, Mr. Blood filed amended cross-claims against Pruco on April 28, 2011. (Doc. 134.) Although this filing came after Pruco filed its motion to dismiss, and after the court heard oral argument on that motion, the parties have agreed that Pruco's pending motion remains ripe and that no further briefing is required.

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* These pleading standards apply equally when the adequacy of cross-claims, rather than a complaint, is challenged. *See Mathis v. United Homes, LLC*, 607 F. Supp. 2d 411, 418-19 (E.D.N.Y. 2009). In applying these standards, the court may consider documents attached to the complaint in addition to the complaint's well-pleaded allegations. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (explaining that in considering a Rule 12(b)(6) motion to dismiss, the court "may consider any written instrument attached to the complaint").

### B.     Contractual Indemnification.

Contractual indemnification is available where there is an express agreement by one party to indemnify the other. *See City of Burlington v. Arthur J. Gallagher & Co.*, 173 Vt. at 484, 788 A.2d at 18. Paragraph 8(a) of the Agreement between Pruco and Mr. Blood provides that Pruco "will indemnify, defend and hold harmless [Mr. Blood] . . . . against any losses, claims, damages, judgments, liabilities, penalties, or expenses of any nature, . . . which arise out of or are based upon any untrue statement of a material fact contained in any sales material written and/or approved by [Pruco][.]" (Doc. 115-1 at 5.) "Sales material" is not a defined term in the Agreement.

Mr. Blood argues that this provision entitles him to indemnification because a number of the Pruco documents provided to Mr. and Mrs. Corbeil contained the false statement of "material fact" that the Policy and Application could be delivered by mail, when in fact the common law standard of care requires such documents to be delivered in person. Thus, in his cross-claim, Mr. Blood "alleges that any losses sustained by Plaintiff which are found to arise out of the alleged failure to deliver the Policy to the Plaintiff's husband in person arise out of untrue statements of material fact contained in Pruco's documents and materials." (Doc. 115 at 9.)

Mr. Blood's claim for contractual indemnification fails as a matter of

law because Plaintiff does not allege that any of Pruco's documents contained false statements, or that Mr. Blood is liable because he relied on the mail when he should have delivered the documents in person. *See* Doc. 135 ¶¶ 48-53, 55-88. Accordingly, no reasonable interpretation of the Agreement's indemnification clause could be deemed to apply to Plaintiff's claims against Mr. Blood because if Plaintiff succeeds on her claims against Mr. Blood, his liability will not arise out of or be based upon any untrue statement made or approved by Pruco. Accordingly, Pruco's motion to dismiss Mr. Blood's claim for contractual indemnification (Count Two) is GRANTED.

### C. Implied Indemnification.

Mr. Blood argues that Pruco should be required to indemnify him for any damages he may owe to Plaintiff because if "the allegations stated in the Plaintiff's Complaint are true, Defendant Pruco is substantially more at fault than the Defendant Blood," (Doc. 134 at 4 ¶ 4), and any "losses sustained by Plaintiff as alleged in the Complaint are solely attributable to the acts, omissions, or failures to act on the part of Defendant Pruco[.]" *Id.* ¶ 7. Mr. Blood also points out that Pruco owed a duty of reasonable care both to its agent, Mr. Blood, with whom it entered into a broker agreement, and its customer, Mr. Corbeil, to whom it issued the Policy.

"Indemnity is available where (1) an express agreement or undertaking by one party to indemnify the other exists or (2) circumstances require the law to imply such an undertaking." *City of Burlington*, 173 Vt. at 486, 788 A.2d at 21 (citing *Bardwell Motor Inn, Inc. v. Accavallo*, 135 Vt. 571, 572, 381 A.2d 1061, 1062 (1977)). The latter form, known as "implied indemnity," is a "right accruing to a party who, without active fault, has been compelled by some legal obligation, such as a finding of vicarious liability, to pay damages occasioned by the negligence of another." *Id.* (citing *Morris v. Am. Motors Corp.*, 142 Vt. 566, 576, 459 A.2d 968, 974 (1982)). "In such cases, indemnity is implied for equitable reasons where it is fair to shift the loss resulting from negligence from one party to the more responsible party." *Id.* (citing *Knisely v. Central Vt. Hosp.*, 171 Vt. 644, 648, 769 A.2d 5, 8 (2000)). Unlike the related remedy of contribution, which requires joint tortfeasors to share liability, implied indemnity requires one party to

6

reimburse the other entirely. *See Hiltz v. John Deere Indus. Equip. Co.*, 146 Vt. 12, 14-15, 497 A.2d 748 (1985). "Because . . . indemnification shifts the *entire* loss from one party to another, one who has taken an active part in negligently injuring another is not entitled to indemnification from a second tortfeasor who also negligently caused the injury." *White v. Quechee Lakes Landowners' Ass'n, Inc.*, 170 Vt. 25, 29, 742 A.2d 734, 737 (1999) (citing *Fireside Motors, Inc. v. Nissan Motor Corp. in USA*, 479 N.E.2d 1386, 1389 (1985)).

Although Pruco does not disclaim that it had legal obligations to both Mr. Corbeil and Mr. Blood, it argues that it has no implied indemnification obligation because it has no actual or potential liability to Plaintiff arising out of the conduct that allegedly proximately caused Plaintiff's injuries: the wrongful issuance of the Policy to Mr. Corbeil. It contends that any negligence alleged to have occurred is attributable solely to Mr. Blood who was actively at fault.

In her Second Amended Complaint, however, Plaintiff does not concede that the Policy would not have issued had her husband disclosed the results of his CT scan. Instead, she asserts that both she and her husband "were unaware at any relevant time of any mental or physical condition which would preclude coverage for William J. Corbeil" and "were unaware at any relevant time of any change in the mental or physical condition to William J. Corbeil." (Doc. 135 ¶¶ 84-85). She further assets that Mr. Corbeil's "answer to the 'Good Health' statement was not a material misrepresentation" and was "not a basis under the law for Defendant Pruco's refusal to pay the proceeds of the [P]olicy and its rescission of the [P]olicy." *Id.* at ¶¶ 97-98. Although these claims lie solely against Pruco, they are intertwined with Plaintiff's claims against Mr. Blood. Conceivably, a jury could conclude that Pruco erred in rescinding the Policy as any disclosure made by Mr. Corbeil would not have altered the decision to issue the Policy. A jury could further find that Mr. Blood is also liable to Plaintiff as had he fully explained the Certification Clause, prompting the Corbeils to reveal the CT scan, the Policy would have issued and, upon Mr. Corbeil's death, the Policy's proceeds would have been paid out immediately. In such event, Plaintiff would not have incurred the

delay and the legal fees and expenses incurred in this action. In his cross-claim, Mr. Blood alleges that any liability on this basis is solely attributable to Pruco which directed his actions and had its own opportunity to fully explain the Certification Clause to the Corbeils.

Under Vermont law, implied indemnification requires an examination of the nature of fault at issue, not merely whether the party seeking indemnification has more fault than the party from whom it is sought. *See White*, 170 Vt. at 29; 742 A.2d at 737 (explaining that implied indemnification is appropriate for negligent tortfeasors only when a "significant difference in the kind or quality of their conduct demonstrate[s] that it is fair to shift the entire loss occasioned by the injury from one party to another) (citing Prosser and Keeton, *supra*); *Walker v. Eleby*, 842 A.2d 389, 391 (Pa. 2004) ("The difference between [active] and [passive] liability is not based on a difference in degrees of negligence. . . . [i]t depends on a difference in character or kind of the wrongs which cause the injury"). Moreover, the Vermont Supreme Court has recognized that there need not be a complete absence of fault on the part of the party seeking indemnity. *See DiGregorio v. Champlain Valley Fruit Co., Inc.*, 127 Vt. 562, 565, 255 A.2d 183, 186 (1989).

At the pleading stage, there is no evidence before the court from which it could evaluate the nature of the fault, if any, attributable to Pruco and Mr. Blood, respectively. "The mere allegations of the underlying complaint are not evidence of how [the injury causing event] happened." *Chapman v. Sparta*, 167 Vt. 157, 160, 702 A.2d 132, 134 (1997).

Accordingly, the court cannot determine, as a matter of law, that the "totality of the circumstances" renders implied indemnification inequitable in the circumstances of this case. *See Savage v. Walker*, 2009 VT 8, 9, 185 Vt. 603, 606, 969 A.2d 121, 125. Pruco's motion to dismiss Mr. Blood's claim for implied indemnification (Count One) is thus DENIED.

## III. Conclusion.

For the foregoing reasons, Pruco's motion to dismiss (Doc. 109) is GRANTED IN PART AND DENIED IN PART.

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 6th day of June, 2011.

Christina Reiss, Chief Judge
United States District Court